IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


WAYNE E. BUTLER,

    Plaintiff,

vs.                                        CASE NO. 5:04CV112-SPM/AK

JO ANNE B. BARNHART,
**Commissioner of Social Security**

    Defendant.

_____/


**CORRECTED REPORT AND RECOMMENDATION**

    This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits under Title II of the Act (DIB) and supplemental security income benefits (SSI) filed under Title XVI of the Act.

    Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

A.      **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB and SSI on February 24, 2000, alleging a disability onset date of August 30, 1998, because of problems with his neck, arms, upper and lower back, legs, feet, and head.  Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on August 6, 2003, and entered an unfavorable decision on October 29, 2003.  The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner.  This action followed.

B.      **FINDINGS OF THE ALJ**

The ALJ found that Plaintiff suffered from severe impairments, which include degenerative disc disease in lumbar and cervical spine, minimal bulges at L3-4, L5-S1, with no spinal stenosis or nerve root or cord compression, hypertension, hiatal hernia, fibromyalgia, and personality disorders, but that none of these impairments meet the listing requirements.  (R. 9J-9K).  The ALJ further found that Plaintiff's allegations regarding his limitations were not entirely credible because the medical evidence does not support the level of pain severity he describes, the MRI and x-ray evidence shows normal spine, the records show relief with conservative treatment, and Plaintiff's self described daily activities are active.  (R. 9L-9M). The ALJ assessed Plaintiff's residual functional capacity as: able to lift 10 to 20 pounds; able to sit or stand 5 hours out of an 8 hour day; able to walk 2 hours; mild restrictions in unprotected heights, being around moving machinery, exposure to environmental changes such as dust, fumes, and

**No. 5:04CV112-SPM/AK**

gasses, marked changes in humidity and temperatures; never able to climb or crawl; must change position frequently.  The only mental limitation the ALJ found was a restriction to simple, repetitive work.  (R . 9p).  Thus, the ALJ found that Plaintiff has the ability to perform a significant range of light work, not a full range, and that there a significant number of jobs that he could perform.

C.     ISSUES PRESENTED

Plaintiff argues that the ALJ could not make an informed decision on the record without ordering a consultative examination to explore Plaintiff's mental condition; and the ALJ improperly assessed Plaintiff's residual functional mental capacity without a medical opinion to support his findings.

The government responds that it was not necessary to order a consultative examination because there were two mental status reports in the record: Dr. Butts and Dr. Brooks, which he gave great weight.  Further, the government contends that the ALJ, not Plaintiff's physicians, is responsible for assessing a person's RFC and in this case he properly considered the entire record, including Plaintiff's testimony, to make the assessment.

The issue thus presented is whether the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**No. 5:04CV112-SPM/AK**

**D.     STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an

**No. 5:04CV112-SPM/AK**

adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work. If Plaintiff establishes that his impairment keeps him

No. 5:04CV112-SPM/AK

from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

**E.      SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Plaintiff had an injury at work when he was hit by a dump truck.  (R. 62). He underwent physical therapy from December 1995, immediately after his injury, through February 1996, with Rehabilitation Management (R. 118-125).  Only conservative treatment was suggested such as massage, exercise, and cold packs.  (R. 118-125).  The long term goal for Plaintiff was to have him return to work full time, pain free, within 4 weeks.  (R. 119).

Dr. David Brink examined Plaintiff in March 1996, and found Plaintiff to have full range of motion upon exam and noted that the x-rays were normal with the exception of a small soft tissue mass.  (R. 153-154).  He diagnosed lumbar strain and ordered an MRI, which was also normal, except as to the soft tissue mass.  (R. 154, 149).

**No. 5:04CV112-SPM/AK**

Dr. Greg Alexander was consulted for a second opinion and examined Plaintiff for his workers compensation claim on June 13, 1996, and found that all objective tests, the MRI and x-rays, were normal. (R. 143). He believed Plaintiff to have sprains in the cervical and lumbar spine and probably a contusion of the left upper back. (R. 144). He wrote that Plaintiff could continue working. (R. 144). During an exam on July 3, 1996, he reported some difficulties completing his work to Dr. Alexander, who took him off work until July 15, 1996. (R. 141). On August 1, 1996, he reported that Plaintiff had reached maximum medical improvement with a 3% body impairment for the lumbar spine and 3% for the cervical spine as of August 1, 1996. (R. 139).

Plaintiff was sent to Sandford Schmookler for a physical capacity assessment on September 4, 1996, and found to be capable of medium work demands. (R. 126-137).

Plaintiff began treatment with Dr. Kamel Elzawahry on June 16, 1997. (R. 173). Dr. Elzawahry noted several "trigger points" along Plaintiff's spine and diagnosed him with "fibromyalgia and occipital neuralgia." (R. 175). His recommendations for treatment were conservative- physical therapy, heat, massage, and ultrasound (R. 171), although he ultimately gave him xylocaine injections which provided weeks of relief at a time. (R. 170, 169).

Plaintiff received a workers compensation settlement in September 1999 for the accident which injured his back in the amount of $11,425.00. (R. 47-58). His restrictions were listed as medium work duty, 6% permanent impairment to the body as a whole, no lifting over 50 pounds. (R. 49).

**No. 5:04CV112-SPM/AK**

Plaintiff began receiving treatment for his back pain and other conditions with the Veterans Administration on February 10, 2000. (R. 204-208). He was given Naproxen for his back pain. (R. 202). Eventually, on May 20, 2002, he was referred to a chronic pain support group and a neurologist, who found him to have multiple joint disease in his back and neck. (R. 217-218).

A Disability Physical was performed by Dr. Carlos Cortes on January 30, 2001, who conducted a range of motion studies, which were all nearly normal. (R. 95-102). His diagnosis was fibromyalgia with degenerative disc disease. (R. 104).

A psychological evaluation was performed by Dr. Shirley Butts at the VA on November 7, 2001. (R. 221-227). She found him to have a personality disorder, with depressed mood, with likely difficulty in social, occupation or school functions. (R. 224).

Dr. Herbert Brooks examined Plaintiff on April 8, 2003, and found him to have "almost normal range of motion" in his neck, with some tenderness, and "some lumbosacral tenderness from approximately L1-L5 bilaterally." (R. 32). His impression was: "chronic neck pain; chronic low back pain syndrome; possible rheumatoid arthritis, rule out gouty arthropathy; hypertension, probably essential; possible alcoholism and the hypertension may be secondary to the chronic moderate beer intake; depression, unipolar." (R. 33). His functional assessment was sitting or standing 2 hours at a time, 5 hours out of an 8 hour day; walking one hour at a time, 2 hours out of an 8 hour day; lifting 10 to 20 pounds; no hand or feet limitations; occasional bending and squatting, no crawling or climbing, frequent reaching; mild limitations in working around unprotected

**No. 5:04CV112-SPM/AK**

heights, moving machinery, marked changes in temperature or humidity, driving, or exposure to dust, fumes or gasses.  (R. 34).

F.     **SUMMARY OF THE ADMINISTRATIVE HEARING**

A hearing was scheduled for January 14, 2003, but was continued because a consultative report was missing.  (R. 254-257).  A second hearing was held on August 6, 2003, with present counsel in attendance with Plaintiff and a vocational expert.  (R. 258-309).  Plaintiff testified that he was born on January 15, 1955, and graduated from high school with some vocational training as a mechanic.  (R. 261-262).  His last work was in 1999 as a dump truck driver.  (R. 262).  He was a short haul driver and did not load, he just hauled and dumped asphalt, but quit the job because he could not push the clutch.  (R. 263).  He injured his neck, back and foot in the accident and was told that he had sprained his neck and had a deteriorated disc in his back.  (R. 271).  He did not get much relief from physical therapy, but the injections worked and he continued with them until his workers compensation ran out.  (R. 272).  He settled his worker compensation claim for around $11,000., which included future medical care.  (R. 273).  He now receives medical care from the VA, which is medication only.  (R. 273).  Plaintiff said the VA did not refer him to any other treating sources and had diagnosed him with rheumatoid arthritis in the knee and gout in his foot.  (R. 274).  He said they had not addressed his back yet.  (R. 274).  Plaintiff said he had also been treated by the VA for his "psychiatrist thing" and had been prescribed medication, but did not want to take it because he did not feel like he needed it.  (R. 276-277).  He describes his mental

problems as "mainly depression, I think," which he admits has gotten worse, and he would take medication now if it were recommended. (R. 278). Plaintiff takes care of his son several days a week and can cook and clean. (R. 282-283). He takes Naproxen for pain, which he says is a 7 at the hearing with one being minor and 10 being severe. (R. 284). A vocational expert was called to testify and the following hypothetical was given to him: younger individual, high school education and literate; degeneration that affects lower back and neck, a hiatal hernia, fibromyalgia, pain in the knee and right foot, and a personality disorder with the limitations described by Dr. Brooks.[1] (R. 300). The ALJ added mental limitations of simple, repetitive work. (R.300). The expert identified two jobs that he could perform that existed in the national economy-nut sorter and parking lot attendant. (R. 302-304).

**G.    DISCUSSION**

    a)    Consultative Examination

An ALJ has a clear duty to fully and fairly develop the administrative record. Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995). This duty is heightened where a claimant is unrepresented, and this special duty essentially requires the development of a record that shows the claimant was not prejudiced by lack of counsel. Id.; Ellison v. Barnhart, 355 F.3d 1272 (11th Cir. 2003). In carrying out this duty, an ALJ must

---

[1] His functional assessment was sitting or standing 2 hours at a time, 5 hours out of an 8 hour day; walking one hour at a time, 2 hours out of an 8 hour day; lifting 10 to 20 pounds; no hand or feet limitations; occasional bending and squatting, no crawling or climbing, frequent reaching; mild limitations in working around unprotected heights, moving machinery, marked changes in temperature or humidity, driving, or exposure to dust, fumes or gasses.

**No. 5:04CV112-SPM/AK**

"scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." Smith v. Schweiker, 677 F.2d 826 (11th Cir. 1982).  In all such cases, there must be a showing of prejudice before remand is warranted for further development.  Brown, 44 F.3d at 935; Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985).  Prejudice has been found when the record has "evidentiary gaps which result in unfairness or 'clear prejudice.'"  Brown, 44 F.3d at 935, *quoting* Ware v. Schweiker, 651 F.2d 408 (5th Cir. Unit A July 1981), cert. denied 455 U.S. 912.  An ALJ is not required to order medical evidence to have a complete record unless the record establishes that it is necessary to enable the ALJ to render his decision.  Holladay v. Bowen, 848 F.2d 1206 (11th Cir. 1988)(concerning the ordering of a consultative examination); Kelly, 761 F.2d at 1540 (concerning additional medical information submitted by the claimant).

Plaintiff contends that the ALJ did not have sufficient facts regarding Plaintiff's mental status to make an informed decision without a consultative examination.  However, Dr. Butts specifically examined Plaintiff's mental condition and found him to have a personality disorder and depression.  Dr. Brooks, also, noted depression.  However, Plaintiff stated at the hearing that he declined to take the medication suggested to alleviate this condition because he did not believe it to be a problem.  "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."  Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) quoting Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987).  Further, a claimant's failure to seek treatment for a condition is not indicative of a severely limiting condition. See

**No. 5:04CV112-SPM/AK**

Watson v. Heckler, 738 F.2d 18869, 1173 (11th Cir. 1984): see also Ellison v. Barnhart, 355 F.2d 1272, 1275 (11th Cir. 2003) (a claimant's refusal to follow prescribed medical treatment without a good reason will preclude disability, unless poverty can excuse non-compliance).  Plaintiff was being treated by the VA and presumably could have received continued psychological treatment or medication from this facility.  Thus, there was substantial evidence in the record for the ALJ to assess Plaintiff's mental condition without the necessity of a consultative examination, and this ground is meritless.

    b)    <u>Mental RFC</u>

An individual's ability to work must be assessed in light of all his impairments and any related symptoms, including pain, which is referred to as their residual functional capacity (RFC).  20 CFR §404.1545.  A person's residual functional capacity is based on the *most* they can do despite their limitations.  *Id.*  In making this determination all of the person's impairments are considered, even those which are not considered severe, and the entire record is to be considered, even non-medical information.  *Id.*  The claimant is responsible for providing this evidence.  *Id.*  This assessment is first used at Step Four of the evaluation process.  If the ALJ determines that a claimant cannot do his past relevant work, then the same RFC will be used at Step Five in conjunction with the Guidelines to decide if the person can make an adjustment to other work in the national economy.  Medical opinions from treating sources are entitled to "special significance" and may be entitled to controlling weight if they are well-supported by clinical and laboratory diagnostic techniques and are not inconsistent with other

**No. 5:04CV112-SPM/AK**

substantial evidence.  If the ALJ's assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p.

The cases cited by Plaintiff where error was found in assessing a claimant's RFC involved the ALJ making a RFC assessment without *any* evidence on the condition at issue.  (See Plaintiff's brief at 11-12).  Here the ALJ specifically addressed the findings by Drs. Butts and Brooks as to Plaintiff's mental status, as well as Plaintiff's testimony about it at the hearing.  This constitutes substantial evidence to support the ALJ's assessment that the only limitations resulting from his mental difficulties is that he be restricted to simple, routine tasks.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this __**13th**__ day of June, 2005.


s/ A. KORNBLUM
**ALLAN KORNBLUM
UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**


**No. 5:04CV112-SPM/AK**